1-24-11, District 7, Olson v. Ferrara Candy Co. Thank you. With the parties who are going to argue, step forward. I, both of you, because I have a little to say to both of you, so okay. If you can identify yourselves for the record, please, and who you represent. Good morning, Justices. This is Alex Phillips. I represent the plaintiffs' appellants. Okay, and counsel. Good morning, Beth Wolf, Ferrara Candy Co. And you both have little soft voices, so I'd like you to speak up a lot louder. It's a very interesting case. We have read the briefs. I assure you we're familiar with the facts. That thing in front of you is just a recording device. It does not make your voices louder, so please speak up. I try my best not to interrupt people, and so I try to tell you what I'd like you to concentrate on, at least touch upon, when you're arguing. And for the appellant, I want you to, I know the judge didn't rule on this, but I want you to argue for me standing and why the Mormon doctrine does not apply at all to your case. And, counsel, for you, also, standing and why you think Mormon does apply to this case and basically disposes of itself. Because it's, I think as long as my partners won't have a problem, I'm going to give each side 20 minutes. Is that okay? It's fine. Okay, and counsel, you want to save maybe five minutes or so for rebuttal? Yes, Justice. All right, thank you. Thank you very much. I have a call, so hopefully I won't start coughing. And I'll ensure to speak up. Yes. May it please the court. Counsel. Justices, we start with the facts because the facts are what established plaintiff's standing to sue, including under the Illinois Supreme Court's decision in Petta v. Christie and this court's decision in Flores v. Aion. Both were data breach cases and both considered claimant's standing to sue with both cases reaching different outcomes based on different facts because the facts are what drive the analysis. Petta was a potential data breach because plaintiff could not confirm that her data was stolen and thus she lacked standing. Flores was a real data breach because plaintiffs could confirm that their data was stolen and thus they had standing. So what kind of data breach was this? In October 2021, hackers bypassed Ferrara's data security systems and accessed, targeted, and stole the data belonging to thousands of its employees. Now, Ferrara is a candy company and it owns Willy Wonka Brands, but those employees are not imaginary Oompa Loompas. They are real people with real identities and real interests in their privacy. And those interests were violated when hackers targeted and stole data touching on nearly every aspect of their identities from their names, to their dates of birth, to their financial account information, to their social security numbers, to their driver's license numbers, to their government issued ID numbers, to their medical information, to their mother's names. Now, in challenging standing, Ferrara does not dispute that that data is sensitive. Ferrara also does not dispute that it had a duty to protect that data. However, it says that when that duty is breached and plaintiff's privacy is violated, when their data is stolen, that event causes no harm. And that view defies case law under three theories of standing. First, the data breach created a substantial risk of harm that warranted the time and money plaintiffs spent mitigating their risk for harm. That time and money are concrete harms that confer standing. So is that what you would describe as the distinct and palpable injury? Yes. The loss of time in trying to protect their identities and the amount that was spent by one of the plaintiffs with respect to credit protection, credit monitoring. That is exactly right, Justice Walker. Second, the disclosure of private information, of a person's private sensitive data, is a harm in and of itself. The mere fact that plaintiff's medical information, their social security numbers, their financial account numbers were stolen, is a harm that confers standing. With regard to the financial account, what do you make of your opponent's arguments that they didn't have the credit union account information, they just had the Chase Bank information, I presume for automatic payment of payroll? What do you make of that argument? Yes, Justice Walker. That is our third ground of standing that I want to discuss today. And that is where Ferrara focuses its attack on standing. So I would say two things in response. First, if the court finds that plaintiffs have standing on either of the first two grounds that I discussed, it need not reach this traceability argument to plaintiff Wesson's standing. The second thing that I would say, and as I can explain, is that the argument that Ferrara is leveling with its declaration resembles an argument that was leveled in Flores. It did not come in the form of a declaration. However, in Flores, the defendant challenged whether the specific financial account information at issue was even a part of the breach, because plaintiff had not specifically alleged that it was a part of the breach. However, this court in Flores stated, even if the data accessed in the data breach does not provide all the information necessary to inflict these harms, it very could well have been enough to aid therein. In other words, a hacker does not need a specific account and routing number to get into somebody's checking account. They can use the data gathered, hacked, and stolen in a data breach like this to access that account through a different vector. Are you describing that F.O.L.S. package now, where they can find certain information that's available in the public domain and combine it with what they've stolen? Yes, Justice Walker. It would be the elements taken from the data breach at issue combined with elements taken from other sources, not just public sources. So those F.O.L.S. packages were enough to support the traceability prong in Flores, and they're enough to support the traceability prong here. Is there additional information that hackers could get off the dark web that maybe was not obtained in this breach at Ferrara, but might have information about these individuals that's readily available for sale? I don't truly understand exactly what the dark web is, but I've read about it. Yes, and I don't recommend traveling to the dark web either. But that is exactly what happens with these F.O.L.S. packages, is that hackers take the data derived from one data breach and create a dossier on a person's identity that can be sold. And that dossier allows hackers to get into a person's account through multiple means. So Ferrara is correct that it's uncontested that we do not allege that his specific account number and checking number were compromised in the breach. But just as in Flores, we allege that hackers can do so through other means. And I think that this is a good opportunity to start with the differences and similarities between PETA and Flores. Because PETA came after we completed briefing in this case. And PETA and Flores have two different outcomes. But those outcomes are not in tension with one another, because they rely on the same principles. The Illinois Supreme Court cited this court in Flores when articulating the principles governing standing. It did not criticize the Flores decision, and it did not say that Flores got it wrong. It cited Flores. The two cases differed in outcome, not because of principle, but because of facts. The principle inquiry in PETA was whether a plaintiff could allege that her data was stolen. She could not. And the PETA court quoted at length before delivering its holding on this issue, stressing in capitalized and italicized text, the facts. And it stated that PETA only alleged that her data may have been accessed. Not that it was accessed, targeted, or stolen. It may have been accessed. And in fact, the only evidence in the breach about the hacker's intent was that they were targeting an unrelated business transaction. In other words, plaintiff had no idea whether her data was stolen, and she had no reason to believe that it was stolen. Flores reaches an entirely different outcome based on an entirely different set of facts. Just as in this case, plaintiffs allege that their data was targeted and stolen. Just as in this case, the defendant in Flores sent out a breach notice warning plaintiffs to remain vigilant and monitor their credit. Just as in this case, plaintiffs allege that they did just that with Olson and Wesson spending time monitoring their credit and responding to the breach. In addition, plaintiff Wesson spent his own money on credit monitoring. And just as in this case, the court should apply what it stated in Flores, which is that when personal information is obtained in a targeted breach, it is reasonable to assume that data thieves will use the stolen data for fraudulent purposes. And just as in this case, not all plaintiffs in Flores allege that they had suffered fraud, but they all had standing. Because again, an entirely different set of facts leads to an entirely different outcome. PETA held that because PETA could not allege that her data was actually stolen, she had raised only the mere increased risk of harm that standing alone could not confer standing. The plaintiffs here have substantiated the risk, and they are not relying on the risk alone. That substantiated risk warranted the time and money that they put into responding to the breach. And that is exactly what TransUnion v. Ramirez, which PETA cites, holds. And I'm quoting, the mere risk of future harm standing alone cannot qualify as a concrete harm, at least unless the exposure to the risk of future harm itself causes separate concrete harm. We, our allegations overlap with those in Flores, and the Court should find that plaintiffs have standing here for the same reasons. On the second ground that plaintiffs assert standing, that the disclosure of private information is a harm in and of itself. I'll state from the top that plaintiffs in neither PETA nor Flores asserted this ground for standing. But plaintiffs raise it here, and it has its basis in the reasoning that PETA outlines. Because PETA relies heavily on the Supreme Court, the U.S. Supreme Court's decision in TransUnion v. Ramirez. And the key to understanding TransUnion, like all other cases today, is the facts. TransUnion was a Fair Credit Reporting Act case in which plaintiffs alleged that TransUnion had mislabeled them as criminals and terrorists in their credit reports. There were two groups of plaintiffs. One group had their reports disseminated to third parties. And for that group, the U.S. Supreme Court found, and had no trouble in doing so, that that group of plaintiffs had standing. Because they had suffered a harm traditionally recognized in American courts. In that case, it was defamation. Because the credit reports were inaccurate, they had defamed their character. And even though the plaintiffs there had not alleged defamation as a claim, because it was a harm traditionally recognized in American courts, it qualified as a harm that conferred standing. And in so doing, the U.S. Supreme Court listed harms that traditionally confer standing in American courts. One of them was that the disclosure of private information is a harm in and of itself. And based on that reasoning, courts across the country have found that the disclosure of private information in a data breach confers standing. And the courts should do so here for the same reason. And in so doing, I ask justices that you consider the alternative. When counsel takes the podium, counsel for Ferrara takes the podium, he will not argue that Ferrara has no duty to protect the PII in its possession. Nor could he. There is a statutory duty under the Personal Information Protection Act. There is a common law duty, as articulated in Flores. He will not argue that Ferrara does not have to abide by that duty. Instead, I anticipate what Ferrara will argue is that when that duty is violated, and the privacy of plaintiffs is violated, that causes no harm in and of itself. But when someone steals plaintiff's medical information, that harms them. And if the court agrees, it must find that plaintiffs have standing. If the court agrees that stealing a person's financial account information and social security number harms them, then it must find that they have standing. And so does for every piece of information that was disclosed in this data breach. The mere fact that someone has stolen a person's medical records harms them. And that harm confers standing. And so you're relying on TransUnion primarily for that assertion? That's correct, Justice Walker. And in plaintiff's view, PEDA inciting TransUnion as heavily as it did opened the door to that argument affirmatively. So I've already discussed the third ground for Plaintiff West's standing, which is the fraud that he suffered. So I won't retread that ground, other than to restate that if the court finds that plaintiff exists on either of the first two that I stated, then it need not reach the third ground. Well, if we reach the first one, we don't have to reach the second or the third. That's correct. That's correct, Justice Lankford. I do want to add one fact to Plaintiff West's specific situation, which is that the court should consider the proximity of the fraud that he suffered to the data breach. It was within two months. It wasn't six months later. It wasn't a year later. It was within two months. What was odd to me was at least if I recall the facts correctly, was that Ferrari didn't notify for like four or six months. He had suffered the fraud before he received notice. That's correct. And that's what propelled him to buy his own credit monitor. When it comes to the causes of action, Ferrari's challenges to the causes of action, regrouping could be considered as challenges to causation and damages. And in the interest of time, what I would submit to the court is that causation and damages is akin to traceability and harm. And this is reflected in the briefing in which the parties have fairly abbreviated their points on causation and damages because it relies on the same facts as traceability and harm. And as the Seventh Circuit put on this point, to say that the plaintiffs have standing is to say that they have alleged an injury in fact and that they have suffered an injury, the damages are available. So I want my argument on the causes of action to focus on the three areas not subject to that general overlap, starting with the Mormon doctrine. And then moving on to whether an implied contract exists and whether damages are available under the ICFA. As to the Mormon doctrine, this court was unequivocal in Flores when it held that applying the Mormon doctrine to this data breach case would stretch the applicability of the doctrine far beyond its product liability roots, given that there is no express contract between the parties and the injuries allegedly suffered by plaintiffs were not caused by any defect in the actual product of the transaction. Ferrara, in its briefing, does not challenge this reasoning, does not argue that Flores was wrongly decided. It says only that the reasoning only applies to professional services providers because the defendant in that case was in the insurance business. And what I would submit to the court is that was not the point of Flores at all. The point in Flores and the point that the court was making in Flores was that those who collect PII have a common law duty to protect it under tort. The duty is extra contractual, and there is no express contract alleged in this case for services. Ferrara argues briefly that plaintiffs should not be allowed to recover under an implied contract and negligence claim because of the Mormon doctrine, but it does not cite a single case for that proposition. It does not cite a single case for the proposition that a plaintiff cannot allege an implied contract and a negligence claim in the same complaint, because there are no cases that articulate that reasoning. In the Mormon doctrine, the Illinois Supreme Court were clear that in the contract for services, if an express contract is not an issue, the doctrine does not apply. And I'll quote from the court on the notion of the extra contractual duty. In Flores, it stated, since plaintiff's common law tort claims are based on defendant's common law duty to safeguard personal information rather than any express contractual duty, the Mormon doctrine does not prohibit plaintiffs from bringing their claims. And there is no reason to reach a different outcome in this case. Counsel, I'm going to let you take five more minutes, and I'll certainly add five more to the other sentence. I want to hear the rest of your argument. Thank you, Justice Lincoln. As to the implied contract claim, Ferrara essentially challenges plaintiff's claim, arguing that there was no meeting of the minds between the parties. And the first thing that I'll state in response to that argument is that a meeting of the minds is not required in an implied contract claim, because it's implied from the circumstances. And this Court specifically held in Flores that the existence of a privacy policy promising to protect a person's personal information implies that the defendant has a duty to do so. Further, this Court held that on top of representations within a privacy policy, it is implied from the relationship between the parties that defendant would take reasonable steps to ensure that plaintiff's personal information would be protected from unauthorized disclosure. In other words, two reasons to find an implied contract exist here, the privacy policy and it's implied from the relationship. The only item that was missing in Flores that resulted in the dismissal of their contract claim was economic damages. Plaintiffs there tried to allege that time was damage that they could recover under their contract claim. And this Court said no. So you're relying on Weston and his financial harms. That's exactly right. And this Court held that both credit monitoring and fraud and charges resulting from fraud are compensable under implied contract claims. And although the plaintiffs in Flores alleged fraud, it was known in Flores that the fraud was unsuccessful. Plaintiffs do not allege that here. So damages are available here because we allege them, whereas the Flores plaintiffs did not. As to the last section or the last cause of action that I want to argue, and I'll make this short, just as those damages qualify under an implied contract claim, there are economic damages under the ICFA claim. And the Court held that items like credit monitoring are compensable under the ICFA. So if the Court has no further questions, I would save the rest of my time for any rebuttal. Thank you, counsel. Thank you, Justice. I haven't been on the other side of this bilge for, I've been a judge 37 years. I think I still want to be a lawyer, constantly. Good morning. Good morning. Thank you very much for having us in to argue today. I agree that this is a very interesting case, and it's my pleasure to be here before you. My name is Matt Wolfe. I represent the defendant, Farrar Candy Company. I will try to focus on the items identified by Justice Lamkin and by Mr. Phillips. So as you heard from Mr. Phillips, this is a data breach class action, a putative data breach class action, arising from a data incident involving Farrar Candy Company. The data incident was a third-party criminal ransomware attack. You can see this from the complaint, and in particular, the Chicago Tribune article cited in footnote 2 of the complaint, which discusses the attack. In a ransomware attack like this one, criminals infiltrate a company's systems, typically encrypt the files, which they do here, and attempt to shut down the company in order to get the company to pay a ransom. They did, in fact, shut down candy production at Farrara during October 2021, which obviously is not ideal for Farrara, and they did potentially access some employee data. I think the fact that they potentially accessed employee data is very important here, because that is just like PETA. And we can see from the breach notices that are attached to the original complaint, and cited again as exhibits in the subsequent complaints, although they don't appear in the appendix, but they were cited as exhibits in the subsequent complaints. The breach notices at appendix 31 and appendix 35 make clear that the data potentially impacted was not confirmed to be impacted. Farrara did the right thing, and it did what is required to do under Illinois law, which was provide notice to the employees about the incident and say, your data may have been accessed, we can't say for sure. I won't get into why they can't say for sure, it's not in the record, but that is what it says in the notice letters, which are in the record. Mr. Phillips spoke a lot about how this is a real data breach or a targeted data breach. It's a real data incident, it happens. I don't think there's any daylight between this case and PETA. Are you differentiating between the words of a breach and what was that word you just used? Incident. An incident? No, I don't think so. I do this a lot, and I do a little bit of incident response, which comes before litigation, so we typically say incident. Breach is fine. So you admit to the breach, you're just not admitting that in fact access occurred, because now you continue to use the word potential access. We cannot say for sure which files, if any, were actually accessed by the criminals. Before I did provide notice to the employees... Did they in fact access some of the files? We can't say for sure that anything was accessed or misused. The breach notices say these files potentially were impacted, this type of data potentially was impacted. But isn't that something that would go more at trial rather than on a motion to dismiss? Are you proving whether it was just potential access versus access? Because we look at their allegations and we take all well-pled allegations as true, right? It is true that you need to take what they said in the complaint as true. These breach notices are attached to the complaint, they're part of the complaint. They're A31 and A35 in the appendix. The complaint is pled in a careful way to say we're aware of this incident and we're worried about our data. But that is just like the complaint in PETA. In PETA, the plaintiffs alleged unauthorized access to email and that it is possible that their social security numbers and medical insurance information was viewed or accessed by the criminals. If you look at paragraph 20 in PETA, in the Supreme Court decision in PETA, that's exactly what was alleged there. These plaintiffs didn't allege possibly, they alleged it happened, right? When you look at their allegations in their complaint, they said the data was breached, we've been harmed, etc. They didn't say potential access, they said that they pled access. So that makes it different than PETA, is that true? They do say, for example, in paragraph 4 of the complaint, they do say access. In the next paragraph, they cite the website notice for that proposition. In the paragraph after that, they cite the breach notice for that proposition. The material that they're citing and attaching to the complaint says potentially. So I don't think that they can get around the fact that the documents that they attach to the complaint and cite in the complaint say potentially by omitting the word potentially from the complaint. So it's not an issue for trial. We're basing this right on what's said in the complaint and attached to the complaint. You can carefully write the complaint, but you can't ignore what the exhibits actually say. I think that's the basis of the proposition. But again, would that be an inconsistency to highlight a trial versus what was actually pled in a complaint, when we have to take all well-pled allegations as true? No, because the exhibits are part of the complaint and they're part of the allegations. So as I was saying, there's no real daylight on the facts of this case and the facts of PETA. There's no real daylight on the law of standing here either. In PETA, the Supreme Court held the case had to be dismissed because of plaintiff lackstanding. And one of the key holdings is in a complaint seeking monetary damage, an allegation of increased risk of harm is insufficient to confer standing. In the circuit court in the briefing, plaintiffs focused a lot on the increased risk of harm. You didn't hear Mr. Phillips address that today. I think because he knows under PETA, that's not a good theory anymore. It is repackaged to a degree in terms of mitigation of harm and this theory of disclosure of private information, which I don't think was really raised until reply. That's increased risk by another name. And PETA makes that clear because if you look at what the plaintiffs in PETA alleged, they allege those things. In paragraphs 9 and 11 of PETA, the Supreme Court discusses how the plaintiffs there alleged that they lost time and money mitigating harm. And in paragraph 8 of PETA, it makes clear that the plaintiffs were alleging, we believe our sensitive information may have been disclosed. Those are the exact types of allegations that the Supreme Court said in PETA are insufficient to confer standing. There's no daylight between those allegations and the ones here. And PETA controls the outcome on those two theories of standing, I think, quite clearly. Well, PETA did not overrule Flores. So how do you distinguish Flores? Isn't this case much closer to Flores than PETA? I would submit that the portion of Flores that discusses standing is not good law after PETA. If you look at Flores on standing, and this is around paragraphs 15, 16, 17 of Flores, the discussion is about attempted fraudulent charges and lost time. And this district held that that was enough. The same types of allegations were made in PETA. The plaintiffs there alleged lost time. They had sought damages for out-of-pocket expenses mitigating damages, and damages for their lost time. And the Supreme Court said that is not an actual concrete injury for which you can sue in Illinois. Okay, we don't disagree with Mr. Phillips that data breaches are problematic. They're problematic for Farrar, too. And we're not standing here arguing plaintiffs shouldn't have checked their credit accounts. We're saying the Supreme Court has just held three months ago, you need to allege more in order to sue under Illinois law for that. And that's consistent with other principles of Illinois law that have been around for a long time. We see this in the Barry v. City of Chicago case, which is a negligence case. That case is from 2020, and it cites cases going back decades. In that case, the plaintiffs sued the city saying there's lead in the pipes. And when the city does work on the water mains, it disturbs lead and it increases my risk of lead exposure. So I want damages and I want medical monitoring. Now, the city conceded, and it concedes all the time. I know this, I live in the city. The city tells people all the time, take steps to mitigate your water when we're doing work on the water mains. Get a filter, run the water before you drink it. The city conceded there, yes, we told people you should take steps to mitigate damages. The Supreme Court said, yes, you should take steps to mitigate damages. But you can't sue because of increased risk or for monitoring of an injury that has not actually occurred yet. But here, aren't they pleading? Again, I keep bringing you back to the pleading, because this was a motion to dismiss why we're hearing this case. They didn't just plead increased risk, right? They pled that the breach occurred approximately caused the harms of having to lose time and to pay economic, you know, damages, monetary damages for the credit reporting and monitoring. So it's not, they didn't just plead an increased risk. They pled more than that here. Do you agree with that? And the plaintiffs in Pettit pled that too. They pled, we want damages for our lost time and money mitigating. They pled, we want damages for our exposure of our sensitive information. And the Supreme Court said three months ago, that is not enough to confer standing. You need more. Now, maybe what you need is what Mr. Phillips was addressing in his third theory of standing, which would be actual out-of-pocket expenses or fraud. So if it's okay, I'd like to address that third theory, unless you'd like me to address the earlier theory some more. Oh, no, that's fine. Okay. So his third theory of standing, the supposed fraudulent charges on Mr. Wesson's credit union account. This is another very carefully pled allegation. I think it's really important to look at what they actually plead. In paragraph 58, they say, Mr. Wesson experienced identity theft and fraud after the data breach. So there was a breach, then he suffered identity theft and fraud. Temporarily, fine. We do not dispute that. He says he suffered charges on his credit union account, and that he can't think of any other reason why he would have suffered those fraudulent charges. That in itself, I would submit is not enough to link up the causal chain here. If we look at the Anderson case that we cited in our brief, the Supreme Court has said it's not enough to state a claim to say you have some subjective belief as to why something happened. You need to plead some facts. You don't have to plead all your evidence at the pleading stage, of course, but you have to plead some facts. What he pled here was, this breach happened, I suffered a fraudulent charge, I think it must have been fraud. He also wasn't at the proximity of the fraud, of the breach and then the fraud. Yeah, he pled proximity. He did plead that. That was pled in the first scenario complaint. Originally there, it mentioned a debit card, fraudulent debit card. Fraud was submitted as is proper under rule 2619 and supported its standing affirmative defense. The declaration that stated, we never had this credit union debit card information, it can't have come from us. Mr. Westman had a chance to amend. He made the allegation vaguer and said, it was on my credit union account. Fraud slightly amended the declaration and said, we never had that information anymore. The only payment or banking information of Mr. Westman's that we ever had was his checking account used for direct deposit purposes, which was sort of a third party system that was not impacted at all by the breach. He had another chance to amend and chose not to, filing the same complaint in order to appeal. Mr. Westman, we would submit, has to say something that explains why he believes that this links up other than the temporal cause. The original allegation was about fraud in his debit card. The debit card fraud could have occurred from using the debit card anyplace. There's no allegation about what specifically did Farrar have. What other explanations are potentially ruled out? He doesn't have to rule them all out, but he needs to plead something about why Farrar? Why Farrar? Just this allegation about timing is insufficient. And beyond that, it is defeated by the declarations of Mr. Fragon, which were properly submitted under Rule 2619. Those prevent standing for Mr. Westman. So in summary, our argument on standing is Mr. Olson's allegations, which do not make any allegations of attempted fraud or actual fraud, are plainly insufficient, and his claims were properly dismissed. Mr. Westman's allegations largely mirror Mr. Olson's, but this additional allegation about the fraud is also insufficient for failure to plead facts that it's fairly traceable, because he alleges no actual out-of-pocket expense, which would be required for a concrete injury under PETA, and third, because it's defeated by the Fragon declarations that were submitted. I have one other. You just spaced them on something you just said. Are you separating the two plaintiffs? I mean, are you asking us to look at Olson as one, and he doesn't have standing, and then look at Westman as one, and he does or he does not have standing? My question is, are you saying we have to find standing for both of them, or can one basically piggyback the other? Can Westman bring Olson along? I think at this stage of the pleadings, the court needs to assess the standing allegations one by one for each plaintiff, because they are seeking to be the named plaintiff of the class. And so if Olson doesn't have standing, his case should be dismissed. If the court were to hold that Westman had standing, for example, because of the fraudulent charges, then he on remand could be the named plaintiff, but the case would be limited to the fraudulent charge issue, and he would be representing a class on that issue, because there would be no standing for him to go forward on the others. So yes, I do think you have to logically parse out each standing allegation for each plaintiff in order to determine, do they have standing to bring their individual claims, which would be a prerequisite for them to be in court at all, that would be a prerequisite, obviously, for them to be a class plaintiff, because if you can't be in court at all, you can't represent a class. Unless there are other questions on the standing issue, I'll turn to the 2615 issues briefly. Okay, on the 2615 issues, our view also is that the court needs to walk through Olson and Weston separately. And starting with Olson, it appears to me, and Mr. Phillips has more time, he can correct me if I'm wrong, it appears to me that Olson is not proceeding anymore on the breach of contract and Consumer Fraud Act claims. What I'm seeing in the briefs and what I heard Mr. Phillips say is that their argument is that there were damages created by the out-of-pocket, alleged out-of-pocket credit monitoring expenses and alleged fraud against Mr. Weston, and that he's the only one who they're proceeding on those theories. For Mr. Weston, it's a little bit different, obviously, because he makes those additional allegations. But for both plaintiffs, the negligence claim was properly dismissed, and the first reason why is the economic loss doctrine. The economic loss doctrine applies typically where there is no personal injury or property damage. That's Mormon. Mr. Phillips said there's no case that says you can't alternatively plead negligence and contract. That's Mormon. Mormon says you need to make up your mind. If you have a negligence claim, what we think of as an ordinary negligence claim, a car accident or something, then plead your negligence claim. If you have an economic claim, typically that's a plead and contract. Now, there are some exceptions to this, and the one relied on by the court in Flores was the exception for professional negligence. They cite the Congregation of the Passion case, which applied this exception to accounting malpractice. It also can apply to lawyer malpractice and in a few other narrow situations. I think if you simply read Flores, the panel cites Congregation of the Passion and says, Ann was in the business of cybersecurity. They're sophisticated entities selling people insurance. We're going to hold that they had the type of duty that would allow you to sue a negligence here. There's no such allegation like that in this case. What Mr. Forbes is trying to do is take that exception and expand it to any company that stores personal data to say, yeah, you can sue a negligence for failure to protect personal data, but the correct avenue for that would be the Consumer Fraud Act. You can sue under the Consumer Fraud Act for violations of the Personal Information Protection Act, and they tried to do that here. As I'll discuss, they did not have that sufficient damages to do it, but the right avenue to do that is what's created by the legislature through the Consumer Fraud Act in the amendments to the Personal Information Protection Act. That's why we don't argue no duty of care. We acknowledge that the holding in FLORA is that the legislature made some modifications to address the duty of care issue. We acknowledge that holding, and we're not going to argue that FLORA has no duty of care to protect its employees' information, but what we are arguing is that that's not a negligence claim. What they're seeking and what they're suffering here are economic damages. That was Mr. Phelps's primary point, I believe. They say they have economic damages. Those are not permitted under the Economic Loss Doctrine. These kinds of damages also aren't permitted under Berry because Berry says, among other things, increased risk of harm is not itself an injury, and what you need is you need a traditional kind of injury, a personal injury type of injury to sue a negligence. Ms. DeWolf, didn't Flores expressly reject application of the Mormon Doctrine to a data breach case? I'm sorry. Didn't it expressly reject application of the Mormon Doctrine? That's not how I read it. I think when you read the analysis, they end up relying on congregation of the passion, and what they're saying is that there's an exception that applies to AON. To the extent that the court thinks that Flores completely rejected the Economic Loss Doctrine in the data breach case, we think that that holding is incorrect. We do disagree with that holding. On the breach of contract in the Consumer Fraud Act claims, we have two arguments on a breach of contract claim. First, there's no meeting of the minds. For them to plead meeting of the minds, they need to plead what Ferrara said or did to have the meeting of the minds. Mr. Phillips talked about the Ferrara privacy policy, but in the complaint, they actually alleged that Ferrara had no privacy policy. That's paragraph 29 of the complaint. So they can't have it both ways and say, oh, we had a contract with Ferrara because they had a privacy policy and a duty to protect our information, and also say Ferrara didn't have a privacy policy. It's not enough to just say we subjectively believe we had a contract with Ferrara for this. They need to allege what Ferrara said or did or wrote and what the terms of that contract were. They haven't done that. Well, don't you admit that it had a privacy policy? We're hearing the pleadings in the complaint. The complaint says we don't have one. Second, and here I actually believe Ferrara's controls, the plaintiffs need actual monetary damages. So these pleadings about time-mitigating harm, disclosure of private information, increased risk, these are not actual monetary damages. As for fraudulent charges, there's no out-of-pocket expense pled by Mr. Wesson. Taking all those allegations about the charges is true. He never says there was a charge of $50 on my debit card and I didn't get the money back. Never says that. There are no damages in contract if you don't actually have a loss that you need to be made whole for. I believe the reason he never says that is probably because he got reimbursed by his bank. But this is another example of the careful pleading that's attempted here to avoid these clear issues of law. He needs actual out-of-pocket damages to plead a breach of contract. That is the holding of Flores. And Flores dismissed the claims for breach of contract and this court should affirm the dismissal here. As to the Consumer Fraud Act, the argument is very similar. Under the Consumer Fraud Act, you need actual damages that are calculable and measured by the plaintiff's loss. There's no out-of-pocket alleged by Mr. Wesson. He alleges credit monitoring, but again, we would submit that paying for your own credit monitoring is mitigation of harm. By spending time and money, that's the kind of thing that was not permitted to be sued for in PETA. And it's not a sufficiently concrete damage to sue under the Consumer Fraud Act either. Unless there are any other questions, we will finish there. For our candy, I respectfully request that the court affirm the judgment of the circuit court. Thank you, sir. Thank you very much. I have to say before we finish, in case I don't say it at the end, this is really interesting. Really interesting. Both of you have done such a wonderful job of raising the issues and raising new issues. Really interesting. Thank you both. I appreciate that. Thank you. So, I just want to go through a few issues. It seems that if the parties agree on one thing today, it's that standing comes down to potential versus real. Potential data breach versus a real data breach. And opposing counsel referred to the notice of data breach that Ferrari sent out, but he did omit some language within that data breach, and I think it's important to state what that is. And this is at Appendix 175. And the first paragraph is, what happened? On October 9, 2021, Ferrara identified unusual activity on its network and began an investigation with the assistance of third-party forensic specialists. The investigation determined that an unauthorized actor accessed the Ferrara network and removed i.e. stole certain files from the network sometime between October 2 and October 9, 2021. Ferrara then lists in the next paragraph what information was involved, itemizing all the categories of information that I listed earlier in my argument. And I have a few additional points that I want to provide as context. The Personal Information Protection Act under Illinois law only requires a data breach notice if there's a disclosure, if there is a theft. Now, sometimes defendants will issue a data breach notice out of an abundance of caution, but they say so in the notice. There is no language like that in this notice. Under paragraph 36 of our complaint, we affirmatively allege that the data was obtained. And on the last point, where opposing counsel would agree with me, this was a ransomware event, and ransom only works if you're hostage-taking, if you're taking the data. There was no reporting that Ferrara paid the ransom and received the data back. The next point that I want to make is briefly on PETA. And the notion that plaintiff there alleged time and money. She did, but she never substantiated the risk. In other words, if you get a data breach notice that says that your data may have been accessed, potentially may have been accessed, and you go out and spend a bunch of time and money responding to that, that's a self-inflicted harm because there is no substantial risk of harm. And that is the difference between a potential data breach and a real data breach. When your information is confirmed to have been stolen, it warrants the time and money that you put into responding to it. As to the individual allegations of Olson and Wesson, I do want to clarify, Olson only has his time. He did not suffer fraud, and he did not suffer, and he did not spend money on credit monitoring. That time will only qualify under the negligence claim. So he cannot sustain an implied contract, nor an ICFA claim, because he does not have economic damages. But he can maintain a negligence claim with his time. The next point that I want to address is the notion of the privacy policy. I may have misheard opposing counsel, but I believe he stated that there was no privacy policy as alleged in the complaint. But our complaint provides a specific screenshot of the policy on page 613 of the appendix, and that would be paragraph 27 of the third amended complaint. And within that privacy policy, Ferrari states,  we protect their PII, their being employees, from loss, misuse, or unauthorized disclosure. So the commitment is right. It's in the complaint. It's screenshotted from Ferrari's data policy. And then the last point that I want to address is on the economic loss doctrine. And I firmly believe that opposing counsel is over-reading a specific site to a congregation of passion. Nowhere in Flores does it state that this exception only applies to expert data security companies. Again, its language is focused on the extra-contractual duty, because duties of an employee can arise from statute, they can arise from common law, and they can arise from in-flight contracts. And that's what the Court was focusing on, was the fact that this duty was extra-contractual under common law tort. So if the Court has no further questions, plaintiff would request that the Court reverse the remand for further proceedings. Any other questions? MS. GOTTLIEB Thank you. Thank you, both. MR. GUTTLIEB I have to say, this is one of the most interesting arguments I've had in a while, and maybe one of the best prepared I've had in a very long time. I've really enjoyed it, and I think everybody's enjoyed it. Thank you all so much, and we're going to stand adjourned at this time.